# 22-1158

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**DOROTHY A SMULLEY, an Individual**
*Plaintiff-Appellant*

v.

**LIBERTY MUTUAL HOLDING INC,
LIBERTY MUTUAL INSURANCE COMPANY,
SAFECO INSURANCE COMPANY OF ILLINOIS,
HOWD & LUDORF LLC,
BERCHAM MOSES PC,
PHILLIP T NEWBURY,
JONATHAN D BERCHAM, and
DANIEL H KRYZANSKI**
*Defendant-Appellees*

**On Appeal From a Final Order
of the United States District Court for the District of Connecticut**

---

**BRIEF
FOR PLAINTIFF-APPELLANT
(Appendix filed separately)**

---

Dorothy A Smulley
Plaintiff-Appellant *pro se*
408 Bar Harbour Road
Stratford CT 06614
tel/fax 203 386 0171
email *frrancesca04@gmail.com*

**1**

*Table of Contents*

***Jurisdictional statement***………………………………………………..….. 7

***Statement of Issues for Review***…………………………………………… 8

    1.    Whether District Court properly considered all facts on the record and if considered, was such consideration adequate.

    2.    Whether the court created conflict over proper legal standards in assessing plaintiff's Fifth Amendment rights of due process in plaintiff's 42 USC §1983 civil case.

    3.    Whether the court misapprehended facts in avoidance of the constitutional system of vertical stare decisis.

***Statement of Case***

    1.    Nature of action and other proceedings……………………………… 9

            State action………………….…………………………………...10

            CCC District Court action…………………………………….12

    2.    Course of proceedings…………………….…………………...............15

    3.    Disposition of proceedings…………….….……………………...18

    4.    Statement of facts…………………….……………………...19

***Standards of Review***

    1.    Rule 12(b)(1)………………….……………………………..24

    2.    Rule 12(b)(6)………………….……………………………..24

    3.    Rule 8(a)(2)…………………….……………………………25

***Summary of arguments*** …………….…………………………………………26

**Issue 1**    ***District Court failed to properly considered all facts.***

    a.    CCC's contract with Safeco, where CCC provides internet digital and mobile permissive technology, is not a contract involved in the *business of insurance* ……………………………………...28

    b.    *Rooker-Feldman* is inapplicable to this matter ………………..…… 33

**Issue 2**    ***District court created conflicts over proper legal standards under 42 USC §1983*** …………………….………………………………37

    a.    Plaintiff's complaint is pled with particularity ……………………..40
    b.    The collective defendants acted in concert with the state judge ……40
    c.    Plaintiff was deprived of constitutional rights………………………43
    d.    Plaintiff's *private judicial action* became a *state action*………………44
    e.    Eighth Amendment Excessive Fines Clause…………………………..48
    f.    Fifth Amendment Double Jeopardy Clause…………………………49
    g.    Fifth Amendment Takings Clause…………………………………….. 49
    h.    First Amendment Free Speech………………………………………..50
    i.    Public Awareness Concerns…………………………………………….51

**Issue 3**    ***District court misapprehended facts in avoidance of stare decisis***..52

    a.    *Taggart v Lorenzen* and civil contempt…………………………………53
    b.    Aiding and abetting civil contempt…………………………………….55
    c.    Counsel Kryzanski's inexcusable neglect………………………………57
    d.    District Court omitted material facts on the record…………………59
    e.    Plaintiff is entitled to a partial summary judgment…………………62
    f.    In the Alternative, Plaintiff is entitled to judgment pursuant to Rule 12(c)……………64

***Conclusion***………………………………………………………………… 65

***Certifications***
    Compliance………………………………………………………………… 66
      Services……………………………………………………………………..67

## *Table of Authorities*

*Agins v City of Tiburon*, 447 US 255, 260 (1980)…………………………………………49

*Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). …………...58

*Am. Booksellers Found. v Dean*, 342 F.3d 96, 103 (2d Cir.2003)....................................32

*Anderson v. Liberty Lobby, Inc.,* 477 US 242, (1986)……………………………… 63

*Ashcroft v. Iqbal*, 556 US 662, 678 (2009)……………………………………………25

*Barclays Cap. Inc v Theflyonthewall.com,* 700 F.Supp.2d 310, 344 (S.D.N.Y.2010)…...14

*Bell Atlantic Corp. v. Twombly,* 550 US 544, 570 (2007)………………………………24

*Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).................................................37, 38

*Brown v. Ohio*, 432 US 161, 164 (1977)……………………………………………….49

*Buari v. City of New York*, 530 F. Supp. 3D 356, 393 (S.D.N.Y. 2021)…………………41

*Caiola v. Saddlemire,* No. 3: 12-CV-00624 (VLB) (D.Conn. Mar. 27, 2013)…………...44

*Celotex Corp. v. Catrett,* 477 US 317, 322-23 (1986)………………………………......63

*Central Bk of Denver NA v First Interstate Bk of Denver NA,* 511 US 164, 167 (1994)...55

*Cf. CTS Corp. v. Dynamics Corp of America,* 481 US 69, 88-89, (1987)………………..32

*Ciambriello v Nassau,* 292 F.3d 307, 323 (2d Cir.2002)……………………………….40

*City of New York v Beretta USA Corp,* 524 F.3d 384, 392 (2d Cir.2008)……………….64

*Collins v Harker Heights,* 503 US 115, 126 (1992)…………………………………......44

*Connell v Signoracci,* 153 F.3d 74, 79 (2d Cir.1998)………………………………….50

*Cooter & Gell v Hartmarx Corp,* 496 US 384 (1990)………………………………….57

*Dennis v. Sparks*, 449 US 24 (1980)…………………………………………………….39

*DiFolco v MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir.2010)………………………25

*Dixon v. Thom*, No. 11 Civ. 5901 (TPG) (S.D.N.Y. Jan. 11, 2013) ……………………26

*Doran v. Salem Inn, Inc.*, 422 US 922, 928 (1975)……………………………………..36

*Dorfman v. Smith*, (SC 20556) (Conn. Mar. 29, 2022)…………………………………36

*Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2D 1081 (2007)…..26

*Fattibene v Kealey,* 18 Conn. App 344, 352, 558 A.2d 677 (1989)……………………..48

*Fisk v Letterman,* 401 F.Supp. 2D 362, 376 (S.D.N.Y.2005)…………………………..43

*Fletcher v. Atex, Inc.* 68 F.3d 1451, 1456 (2dCir.1995)……………………………….58

*FTC v. CCC Holdings Inc.*, 605 F. Supp. 2d 26 (D.C. 2009)…………………………..51

*Global Network Communications v City New York,* 458 F.3d 150,(2dCir.2006)……...10,13

*Gomez v. Toledo*, 446 US 635, 640 (1980)……………………………………………..43

*Great W Mining & Min.Co.,* 615 F.3d 157,171 (3d Cir.2010)………………………….37

*Green v. Bartek*, No. 3:05CV1851(SRU),2007 WL4322780,*3 (D.Conn.Dec.7,2007)... 39

*Grp. Life & Health Ins.Co.v.Royal Drug Co,* 440 U.S. 205 (1979)…………………29,33

*Hathaway v Coughlin,* 37 F.3d 63, 66 (2dCir1994)……………………………………...58

*Healy v Beer Institute Inc*, 491 US 324, 337 (1989). ………………………………….32

*Hewitt v. Helms,* 459 US 460, 466 (1983)……………………………………………..44

*Hohn v. United States*, 524 U.S. 236, 252-53 (1998)………………………………….52

*In re Seven Oaks Partners LP,* No. 18-342 (2d Cir. Jan.30, 2019)………………………59

*Int'l Audiotext Network Inc v Am.Tel.& Tel.Co,* 62 F.3d 69, 72 (2d Cir.1995)………….57

*James v. City of Boise*, 577 U.S. 306, 307 (2016)………………………………………53

*Klass v. Liberty Mut. Ins. Co.*, 267 A.3d 847, Fn3, 341 Conn. 735 (2022)……………...46
*Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 115 (2d Cir.2001)…………..32
*Lucas v Miles,* 84 F.3d 532, 535 (2d Cir.1996)……………………………………………27
*Luger v Edmondson Oil Co. Inc,* 457 US 922, 948, Fn5 (1982)…………………………40
*Maharishi School Vedic Sci, Inc v Conn Constitution Assoc LTD P'ship,*
    260 Conn.598, 606, 799 A.2d 1027 (2002)……………………………………16
*Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532 (2012)…………………...53
*Mathews v Eldridge,* 424 US 319, 335 (1976)……………………………………………44
*McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007)……………….25
*McClellan   v. Carland,* 217 US 268, 282 (1910)…………………………………………36
*McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010)…………………………………...33
*McNichols v. Geico Gen. Ins Co,* No.3:20-CV-01497 KAD)(D.Conn.July 21,2021)…...33
*Morrison v. Nat'l Austl. Bank,* 547 F.3d 167, 170 (2d Cir. 2008)………………………..24
*Nat. Fedn. of Indep. Business v. Sebelius,* 567 US 519, 132 S. Ct. 2566, 2586  (2012) ...28
*O&G Ind. v Am, Home Assur.*, 254 A.3d 955, 964, 204  Conn.App. 614 (2021)………...53
*Pacelli Bros. Transportation Inc v Pacelli,* 189 Conn. 401, 407, 456 A.2d 325 (1983)…53
*Palko v Connecticut,* 302 US 319, 325-26 (1937)…………………………………………44
*Papasan v. Allain*, 478 US 265, 284 (1986)……………………………………………...25
*Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001)…….64
*Payne v. Tennessee,* 501 U.S. 808, 827 (1991)…………………………………………...52
*Pierce v Underwood,* 487 US 552, 558 (1988)……………………………………………64
*Prince v. Jelly*, No. 3:17-CV-01284(SRU)2017 WL5574273,*4(D.Conn.Nov.20,2017)..39
*Roadway Express, Inc. v. Piper,* 447 US 752, 764 (1980)………………………………48
*Rochin v California,* 342 US 165, 172 (1952)…………………………………………...44
*Roth v. Jennings*, 489 F.3d 499, 512 (2d Cir. 2007)……………………………………...19
*Scherer v Equitable Life Assurance Soc'y of US,*347 F.3d 394, 397 (2d Cir.2003)……...24
*Schwarz v United States,* 384 F.2d 833, 836 (2d Cir.1967)……………………………...58
*Smith v Carpenter,* 316 F.3d 178, 183-84 (2dCir.2013)…………………………………59
*Success Ctrs Inc v Huntington Learning Ctrs Inc,* 223 Conn.761, 613 A.2d 1320(1992).11
*Smulley v Safeco et al,*(AC 45588) FBT-CV19-6082597, Supr Ct JD Frfd (2022)……...10
*Smulley v Safeco , CCC,* (No. 21-2124,) 3:20cv1888-JAM, Dist.Ct. Conn. (2021)….12,13
*State v Courchesne,* 262 Conn. 537, 579 (Conn Supreme Ct 2003)………………………23
*Swarthout v Cooke,* 562 US 216, 219 (2011)……………………………………………..44
*Szymonik v. Connecticut*, 807 F. App'x 97, 102 (2d Cir. 2020)…………………………38
*Taggart v Lorenzen,* 139 S. Ct. 1795, 204 L. Ed. 2d 129, 587 US (2019)………….passim
*Tancredi v Metropolitan Life Ins. Co,* 316 F.3d 308 (2d Cir.2003)………………...7,18,44
*Therasense Inc v Becton Dickinson & Co.,* 649 F.3d 1276, 1287 (Fed.Cir.2011)……….54
*Thomas v. City of New York,* No. 17-cv-06079 (ARR)(JO) (E.D.N.Y. Nov. 5, 2018)…...40
*Turner v Boyle*, 116 F.Supp.3d 58, 85 (D.Conn.2015)…………………………………...57
*United States v Darby,* 312 US 100, 118-19 (1941).......................................................28
*United States v. Salerno*, 481 US 739, 746 (1987)………………………………………43

**5**

*Vasquez v. City of New York,* 99 Civ. 4606(DC), 2000 US Dist. LEXIS 8887, at *3 (S.D.N.Y. June 29, 2000)...............................................................................41
*Wearry v. Cain*, 577 U.S. 385, 395 (2016)……………………………………….53
*West v. Atkins*, 487 US 42 , 48 (1988)...............................................................26
*Young v Suffolk County,* 705 F. Supp. 2D 183, 195-96 (E.D.N.Y. 2010).........42

## Constitutional Law

U.S. Const, Art. I, § 8, cl.5 (Fifth Amendment) …………………………...43,47,49
U.S. Const, amend. XIV, § 2 (Fourteenth Amendment) …………………………44
U.S. Const. amend I (free speech)…………………………………………….…...51
U.S. Const. Amend VII (excessive fines)……………………………………….…48

## United States Codes

15 USC § 1 et seq. Sherman Act……………………………………………….…..29
15 USC § 1012(b) McCarran-Ferguson Act……………………………….7,29,30
28 USC §1291……………………………………………………………………….7
28 USC § 1367 …………………………………………………………………...…7
28 USC §1915A..............................................................................................23
28 USC § 2201 …………………………………………………………………...…7
28 USC § 2202 …………………………………………………………………...…7
42 USC §1983………………………………………………………………...passim

## Federal Rules of Civil Procedure

Rule 8(a)(2) ………………………………………………………………………25
Fed.R.Civ.P. 12(b)(1)……………………………………………………….20,24
Fed.R.Civ.P. 12(b)(6)……………………………………………….20,24,57
Fed.R.Civ.P. 12(c)………………………………………………………………64
Fed.R.Civ.P. 50(a)…………………………………………………………... 63
Fed.R.Civ.P. 56(c) ……………………………………………………….…..63

## *Connecticut General Statutes*

CGS §14-65f…………………………………………………………….11,13,16
CGS § 38a-353……………………………………………………………11,13,16
CGS § 38a-355………………………………………………………….....11,13

CGS § 52-410………………………………………………………………. passim

## *Other Authorities*

Wright & Miller, Federal Prac. & Proc. Civil 3d § 1357………………………...25,52
*https://ir.cccis.com/home/default.aspx* ………………………………………...13

**6**

Plaintiff appellant Dorothy A Smulley (plaintiff), respectfully submits this brief on appeal from the Opinion and Order of the United States District Court Connecticut *(Williams, J)* (A11) ⊥ dated April 26, 2022, which dismissed plaintiff's complaint for lack of jurisdiction. Final judgment entered May 3, 2022 (A18). Plaintiff filed a timely notice of appeal May 25, 2022 (A19).

The challenges here are the McCarran-Ferguson Act and 42 USC §1983. Core arguments include the *business of insurance* and absolute immunity with principles of agency. All this affects an insured's due process rights. Plaintiff is pro se and an insured under a Safeco Insurance Company of Illinois (Safeco) personal motor vehicle policy with Part D physical damage coverage. The Internet's digital world permanently altered the manner in which insurance companies like Safeco respond to an insured claim. Plaintiff relies on *Tancredi v Metropolitan Life Ins. Co,* 316 F.3d 308 (2d Cir.2003) and *Taggart v Lorenzen,* 139 S. Ct. 1795, 204 L. Ed. 2d 129, 587 U.S. (2019), among others.

### *Jurisdictional Statement*

District court has subject matter jurisdiction pursuant to 28 USC §§ 2201 and 2202 (A21¶17). Federal question jurisdiction is pursuant to 42 USC §1983 (A21¶18) and the Commerce Clause (A21¶19). Supplemental jurisdiction extends to state law claims pursuant to 28 USC §1367. The Court of Appeals has jurisdiction pursuant to 28 USC §1291.

### *Statement of Issues for Review*

1.      Whether the Connecticut district court properly consider all facts on the record and if considered, was such consideration adequate…………………*passim*


2.      Whether district court created conflicts over proper legal standards in assessing a plaintiff's Fifth Amendment rights of due process in a plaintiff's 42 USC §1983 civil case………………………………………………………………….37


3.      Whether the court misapprehended facts in avoidance of the constitutional system of vertical *stare decisis* ………………………………………………… 52

### *Statement of the Case*

#### *1.    Nature of Action and Other Proceedings*

This 42 USC §1983 civil action arises out of an underlying Connecticut state action (state action) now pending in the Appellate.  With the exception of Safeco, none of the defendants here are cited in the state action.

Plaintiff's complaint alleges substantive and procedural due process harms from the  conduct of *Commissioners of Court* Phillip Newbury (Newbury) [2], Jonathan Berchem (Berchem) and Daniel Kryzanski (Kryzanski), their respective law firms, Howd Ludorf LLC (HL Law), Berchem Moses PC (BM Law) acting as agents for insurance company principals Safeco, Liberty Mutual Insurance Company (LMI) and parent of both, Liberty Mutual Holding Inc (LMH).  The complaint further alleges the collective defendants, in concert with the state judicial actor *(Stevens, J)* who presided over plaintiff's state action, prevented with intent, plaintiff's civil action from proceeding to jury trial and settlement.

Acting under color of state law, plaintiff alleges the collective defendants used and abused the state judicial system jointly and severally in fraudulent

---

[1]    Appendix, page number and/or paragraph number will be cited (A__¶__).

[2]    Newbury's acts and practices are so interwined with Safeco as to be indistinguishable and considered one.  Thus, whenever plaintiff references Newbury, Safeco should also be inferred and vice-versa.

deprivation of plaintiff's constitutional rights under the First, Fifth, Sixth, Eighth and Fourteenth Amendments. These deprivations resulted in the physical destruction of plaintiff's motor vehicle. The destruction of plaintiff's property interest was intentional and part of standard business practices employed nationwide by LMH insurance companies and their contractors in the motor vehicle physical damage repair industry.

District court chose not to take up the challenges and dismissed the action for lack of federal jurisdiction. But the dismissal relied upon insufficient facts and misleading interpretations. Plaintiff appeals to the Second Circuit for review and correction. Plaintiff's action is meritorious. Her complaint as pled may need clarification through amendment. Nonetheless, the issues require adjudication.

### The State Action

"A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Global Network Communications v. City of New York,* 458 F.3d 150, 157 (2d Cir.2006). Plaintiff respectfully requests the court to take judicial notice of AC 45588 now pending in state Appellate Court and the underlying action under appeal, *Smulley v Safeco et al,* FBT-CV19-6082597, Supr Ct JD Fairfield (2022) (A394-424).

Plaintiff commenced the state action January 22, 2019, against Safeco, Traynor Collision Center (Traynor) and Breezy Point Auto Body Inc (Breezy). Traynor and Breezy are automobile repair shops. Breezy was under a standing contract with Safeco. Traynor was at one time but not at any time during the period of plaintiff's complaint. The state legal questions at issue are violative of CGS §§38a-353, 38a-355 and 14-65f, *inter alia,* and involve the falsification of motor vehicle appraisals and physical damage repair estimates through internet digital interactive technology.

For reasons not apparent on the record and a year into litigation and discovery had, state court *(Stevens)* abruptly and permanently stayed the state action. This precluded the judicial settlement conference scheduled for the following week with a different judge. In addition to the permanent stay, *Stevens* ordered binding and unrestricted arbitration under CGS §52-410 absent an arbitration agreement, prevented submission of discovery evidence sufficient to reach settlement, struck down plaintiff's motion for compromise already expired by operation of law, granted the collective defendants broad and sweeping protective orders, and prevented filing a certificate of closed pleadings. *Infra p40-47.*

Plaintiff appealed pursuant to *Success Centers Inc v Huntington Learning Centers Inc,* 223 Conn. 761, 613 A.2d 1320 (1992). The reviewing Appellate Court found the state court order procedurally and legally insufficient to compel

**11**

arbitration but sufficient as to the permanent stay. On remand, *Stevens* refused to conform to the Appellate finding and refused to comply with the clear meaning of §52-410.

Over the next two years and in concert with the collective defendants, plaintiff's free speech was chilled by defendants' and *Stevens* concerted efforts. Plaintiff was coerced, cajoled, intimidated, screamed at and otherwise suffered verbal insults and abuses purportedly supported by the court's inherent discretionary authority to do so. During this time, *Stevens* acted as the collective defendants' counsel and spoke on their behalf whether such counsel was present or not at a hearing. In concert with the collective defendants, *Stevens* imposed criminal fines of $75 per day to bankrupt plaintiff into an unlawful, expensive arbitration estimated at or around $10,000. Safeco's estimate to repair plaintiff's car was $4,834.75.

To protect her substantive and due process rights, plaintiff filed this federal 42 USC §1983 action October 5, 2021. *Stevens* dismissed plaintiff's state action June 2, 2022.

### *CCC District Court Action*

Plaintiff respectfully requests the court to take judicial notice of *Smulley v Safeco and CCC*, 3:20cv1888-JAM, Dist.Ct. Conn. (2021) (A425-446), now

pending appeal with this Second Circuit, Case No. 21-2124. *Global Network Communications, supra,* 458 F.3d at 157.

Through discovery during the state action prior to the stay, plaintiff identified standard business practices performed by Safeco staff adjusters which allegedly violated CGS §§38a-353, 38a-355 and 14-65f, *inter alia*. These business practices rely upon a third-party software provider, CCC Information Services Inc *now known as* CCC Intelligent Solutions Inc (CCC). Connecticut law requires motor vehicle appraisals to be performed by an independent third-party industry source approved by the state Insurance Department.

CCC is a well-known Software as a Service (SaaS) company in the business of collecting primarily automobile-related physical damage and valuation information. CCC sells this information through CCC's proprietary interactive software designed for claims estimating and vehicle valuations. CCC clients are in a number of industries and include repair facilities, automotive manufacturers, parts suppliers, lenders, and more. *https://ir.cccis.com/home/default.aspx* , viewed 9/28/2022.

CCC's software is permissive interactive programming. Any authorized user can override CCC's objective data and substitute the user's own subjective opinion to reach a predetermined number. In an appraisal, the predetermination number can be significantly lower than the objective facts calculated. In a repair estimate, the

**13**

predetermination number can be significantly higher than the objective facts.  See,

*Barclays Capital Inc v Theflyonthewall.com,* 700 F.Supp.2d 310, 344

(S.D.N.Y.2010).

Repair shops who have a standing contract with any LMH entity like Safeco

and LMI, are provided with CCC software and become authorized users.  CCC

certifies to the Connecticut Insurance Department statutory compliance as an

independent, third-party motor vehicle appraiser.  Without CCC permissive

interactive software, the statutory violations alleged could not be performed.

To preserve plaintiff's claims against CCC, plaintiff filed a civil action in

Connecticut district court December 16, 2020, as amended March 4, 2021 (CCC

action).  On February 12, 2021, both Newbury, representing Safeco, and

Christopher Williams (Williams),  an attorney acting on behalf of Conway

Stoughton LLC (Conway Stoughton) representing CCC, coordinated their

appearances and filed on the same day.  Neither attorney revealed the conflict of

interest with district court *(Meyer, J)* Chamber's court reporter, Diana Huntington

(Huntington).  Huntington had an existing marital relationship with Jay Huntington,

partner at Conway Stoughton and peer of Williams.

District court never reached the merits of plaintiff's complaint.  On

Newbury's motion, district court dismissed the action finding interstate commerce

and the jurisdictional monetary threshold did not provide federal jurisdiction.

**14**

Judge Meyer's opinion is in conflict with other district court opinions and those of the Second Circuit.

Judgment entered August 3, 2021. Plaintiff appealed, No. 21-2124. The matter is fully briefed. Oral argument was scheduled for September, 2022, but was delayed by the court clerk. Instead, the clerk scheduled oral argument *on submission* for October 24, 2022, without plaintiff's knowledge. Plaintiff moved to continue No. 21-2124 and consolidate with this appeal No. 22-1158 but was denied. No. 21-2124 is now on the expedited calendar for October 24, 2022.

## 2.    *Course of Proceedings*

Plaintiff filed this federal civil action October 5, 2021 (A21). Defendant LMH is parent of defendants LMI and Safeco. Newbury's law firm HL Law represents all three insurance company principals and Newbury represents HL Law and himself. Plaintiff filed a motion to disqualify Newbury but district court never considered the motion.

Defendant BM Law, is law firm where attorney Berchem acts on behalf of the first repair shop, Traynor, a nondefendant here. Defendant attorney Kryzanski is a sole practitioner and represents himself and the second repair shop, Breezy, a nondefendant here.

Simply put, plaintiff alleges the collective defendant principals, LMH, LMI and Safeco, through their agents HL Law and Newbury, BM Law and Berchem and

**15**

sole Kryzanski, misrepresented statutes and case law in the state action with intent to commit fraud. "[I]t is a general rule of agency law that the principal in an agency relationship is bound by, and liable for, the acts in which [the] agent engages with authority from the principal and within the scope of the agent's employment." *Maharishi School Vedic Sciences, Inc v Connecticut Constitution Associates LTD P'ship,* 260 Conn.598, 606, 799 A.2d 1027 (2002).

The context here involves a personal auto insurance policy and the additional coverage so endorsed for motor vehicle physical damage. CGS §38a-353 requires a total loss formula (TLF) calculation. TLF is the cost of repairs plus the scrap value. If this number equals or exceeds the actual cash value (ACV) prior to the loss, the vehicle is deemed a *constructive total loss.* If the number comes in lower than ACV, the car is to be repaired. Although obligated under law, none of the defendants here so obligated, comply with CGS §38a-353.

In the same context, CGS §14-65f requires auto repair shops to charge only for reasonable and necessary repairs to the vehicle, thereby restricting charges to the parts and labor required to make such repairs. Here, too, none of the repair shops involved who are so obligated, comply.

CGS §§38a-353 and 14-65f are material to plaintiff's rights and duties under the Safeco insurance policy. The state actors inhibited plaintiff's due process rights and did so with intent.

**16**

CCC and Safeco act in separate and distinct industries. However, over the past seven years or so, software development and digital technology has significantly meshed CCC and Safeco' roles to the extent insurance regulations in Connecticut intended to protect insureds no longer protect. Today, CCC improperly and illegally operates as an extension of Safeco. CCC's permissive interactive software is controlled and manipulated by Safeco's authorized staff users and others. Authorized users override objective factors built into the software and substitute their own subjective factors to achieve a predetermined result. A practice prohibited under state law.

In plaintiff's district court complaint, Count One as to LMH, LMI and Safeco, alleges the appraisal clause in the contract of insurance policy Part D is ambiguous and such ambiguity violates the Fifth Amendment due process (A49). Count Two as to LMH, LMI and Safeco, alleges negligence in the application of CGS §52-410, an arbitration statute which requires the filing of a separate action to compel (A59). Count Three as to HL Law, Newbury, BM Law, Berchem and Kryzanski, alleges civil contempt in disobedience of CGS §52-410 where the defendants have a statutory duty to comply (A52). Count Four as to all defendants, alleges abuse of process where the defendants use the judicial process to gain collateral advantage over insureds on questions of law (A39,¶68; A54).

**17**

Simply put, plaintiff seeks a compensation under 42 USC §1983 for the harms done to plaintiff as a result of the collective defendants' intentional acts. Plaintiff's primary authority rests on *Taggart v Lorenzen, supra.* and *Tancredi v Metropolitan Life Ins. Co, supra. Infra p53.*

### 3. *Disposition of Proceedings*

The complaint was filed October 5, 2021 (A21; ECF1) with appendix (A57; ECF1-1) and is operative. By Opinion and Order dated April 26, 2022 (A11; ECF65), Judge Williams held federal jurisdiction over the allegations( pled constituted *business of insurance.* Thus, *business of insurance* was barred by the McCarran-Ferguson Act. This finding conflicts with previous decisions of the Second Circuit and the Supreme Court. *Infra p33.*

District court further found plaintiff's allegations failed to state a claim on which relief may be granted. Fed.R.Civ.P. 12(b)(6). This finding is inconclusive. Material facts omitted by the district court (A215; ECF64, 64-1-15) were improperly attributed to plaintiff as a failure to respond to Kryzanski's motion to dismiss (A208; ECF65 Fn2). In addition, precedent case law was not considered. *Infra pp59-64.* The end result was an opinion where district court admitted, no material facts were in dispute (A11; ECF65p1) yet dismissed anyway for lack of jurisdiction when jurisdiction under the Commerce Clause and 42 USC §1983 are clear. Plaintiff constitutional rights were violated here and in the state action which

**18**

state action resulted in the deliberate destruction of plaintiff's car.  District court erred which requires correction.

### 4.  *Statement of the Facts*

Defendants Newbury, Berchem and Kryzanski acted jointly throughout the state action.  Any attribution of fact to one are to be construed as attributions to all three, their respective law firms and principals.

Judge Underhill was originally assigned but transferred the matter to Judge Williams (ECF48) January 4, 2022.  Judge Williams was appointed November 22, 2021,  and very new to the bench.  His experience rests on the criminal side.

Plaintiff's civil 42 USC §1983 is complex.  Material facts involve two underlying actions and center around a nationwide insurance industry scheme in the motor vehicle appraisal and repair segments.  Plaintiff is pro se, and has an uphill battle to be heard let alone jump the hurdles thrown by immuned state actors.  Plaintiff moved for a transfer (ECF54) to another judge when plaintiff filed for reconsideration of Judge Williams' stay of discovery (ECF53).  The motion was denied without comment (ECF55).

During the course of proceedings, plaintiff also filed a motion to disqualify Newbury (ECF37).  Plaintiff relied upon *Roth v. Jennings*, 489 F.3d 499, 512 (2d Cir. 2007) where a defendant attorney cannot be compelled in one case to produce

**19**

in evidence a paper left with him by a client in another case. Judge Williams never took up the issue. Upon dismissal, the motion was rendered moot.

Newbury filed the first a motion to dismiss (A87; ECF17) and argued Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Plaintiff objected (A117; ECF34) with affidavit. Newbury replied (ECF38).

BMLaw and Berchem were the second to moved to dismiss (A153; ECF45) also under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)  Berchem recited most of what Newbury argued. Plaintiff objected (A174; ECF57) with affidavit. Defendants replied (ECF58).

Kryzanski filed an answer and special defense (A206; ECF26). The answer denied ¶¶1-134 without articulation or reason. The special defense simply accused plaintiff of a frivolous and vexatious lawsuit. Kryzanski omitted any supporting facts, citations, rules, or law in support. Kryzanski subsequently filed a motion to dismiss (A208; ECF60). Here, too, Kryzanski didn't waste any words or effort. His memorandum cites Fed. R. Civ. P. 12(b)(6) and argues, "plaintiff failed to cite any instance which would prove [Kryzanski] committed civil contempt or abuse of process." End of argument.

Plaintiff timely filed a joint response to Kryzanski which included an objection and a partial motion for summary judgment (A213, 215; ECF64-1). The submission included a memorandum (A215; ECF64-2), Rule 56 statement of facts

**20**

(A246; ECF64-3), affidavit (A258; ECF64-4), and eleven exhibits (A268; ECF64-5-15). Kryzanski did not respond. District court improperly ignored ECF64 and incorrectly declared in a opinion footnote, "Plaintiff did not file a response to defendant Kryzanski's motion to dismiss." (A11; ECF65 p.1 F2). This erroneous attribution of negligence requires correction on the record.

Discovery was stayed (ECF53) when Newbury move for one (ECF51) irrespective of plaintiff's objections (ECF52) and the prejudicial harm to plaintiff. Discovery is the only way a pro se has in obtaining evidence necessary in support of her complaint. Judge Williams and the defendant attorneys all know this. To suppress evidence is the only reason a stay would be ordered. Judge Williams' stay suppressed evidence which would have have been available to plaintiff if no stay was ordered. The same argument holds true regarding oral argument. There was none. Judge Williams' actions suppressed not only written evidence but any opportunity for verbal clarification. A prohibition of discovery is a suppression of evidence because such prohibition not only precludes obtaining evidence but impedes investigation into issues and circumstances on which admissions, interrogatories and production of records rests. Dismissal should be considered *after* discovery, not before.

Judge Williams found the allegations of civil contempt and abuse of process under 42 USC §1983 unsupported. Of particular note, however, is the absence of

**21**

the Supreme Court's precedent released 2019 which provides for such opportunity. See *Taggart v. Lorenzen, supra*. Many conclusions put forth in the district court dismissal are based on incomplete or overruled citations. *Infra 52-64.*

Judge Williams misapprehended principles of agency by incorrectly quoting plaintiff as saying defendant attorneys were agents of the judiciary (A15; ECF65 p6). There can be no reasonableness of dismissal when statements attributed to plaintiff are quoted from a defendant's brief (A107; ECF18). The court's ruling is incomplete, inaccurate and requires a thorough and impartial consideration of all facts, analyses and discussions.

Relevant undisputed facts filed in plaintiff's joint motion (A215; ECF64-1) were omitted and footnoted as nonexistent (A11; ECF65 p1 F2.). Thus, district court's dismissal was premised upon incomplete, inaccurate and falsified scenarios provided by defendants who, because they are immuned, lie and misrepresent as a standard business practice. This should not hold. Haven't we had enough of loose and incorrect facts these past few years in our country and the world? A district court's decision should adhere to facts and honor rules of the court and cite prevailing precedent especially when survival of a case is at risk. Once properly briefed, the onus should be on Chambers to be accurate in reciting the facts briefed and filed on the docket. This was not done here.

Omission of ECF64 should not have gone unnoticed. Chambers could have double checked the docket regarding plaintiff's timely ECF64 filed with 15 related documents but did not. Plaintiff paid $405 to have her matter adjudicated and another $505 for Appeals review, a substantial amount for plaintiff. Plaintiff's ECF64 was timely pursuant to the extension of time granted (ECF61). So, what happened to cause Judge Williams to be so indifferent to an important response?

Plaintiff's complaint may not have been as explicit and clear as Judge Williams wanted. However, plaintiff was deprived of the opportunity to seek permission to amend. Judge Williams failed to provide plaintiff any opportunity to clarify. Yet clarity existed in the form of ECF64.

> "If a court is determined to be intellectually [indifferent] and reach the result that it *wants...* to mandate, rather than the result [of] an... objective appraisal... it will find a way to do so under any articulated rubric of statutory interpretation." (Emphasis in the original.)

*State v Courchesne,* 262 Conn. 537, 579 (Conn Supreme Ct 2003).

Avoidance of vertical *stare decisis* is intellectual indifference in order to allow subjective analysis to lead to the conclusion desired. Attorney immunity, civil contempt and abuse of process are expounded upon by the Supreme Court in *Taggart.* Thus, failure to consider *Taggart* was a failure to consider core issues.

The method employed in Judge Williams' ECF65 dismissal opinion  mirrors the employment of 28 USC §1915A for incarcerated individuals who allege civil rights violations under 42 USC §1983. Plaintiff is not incarcerated nor a felon.

**23**

Plaintiff was entitled to transparency in the analytical and interpretive process when in fact, the dismissal was procedurally insufficient and unsupported by *all* facts on the record.  Final judgment of dismissal entered May 3, 2022 (A18; ECF66).  This appeal follows.

### *Standards of Review*

**1.    *Rule 12(b)(1)***

"We review 12(b)(1) dismissals de novo on the law." *Scherer v. Equitable Life Assurance Soc'y of US,* 347 F.3d 394, 397 (2d Cir.2003).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Austl. Bank,* 547 F.3d 167, 170 (2d Cir. 2008).  "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff…  The plaintiff, as the party asserting subject matter jurisdiction, has the burden of proving by a preponderance of the evidence [jurisdiction] exists. *Id.*  (cleaned up).

**2.    *Rule 12(b)(6)***

"To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (cleaned up).

"In general, [Circuit] review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference*." McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007) (cleaned up). "However, district courts may also consider documents...that are deemed integral to the complaint." *DiFolco v MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir.2010). "[T]he duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Id, DiFolco,* 622 F.3d at 113. Additionally, the court may consider, "... relevant facts obtained from the public record…" *Papasan v. Allain*, 478 US 265, 284 (1986). Rule 12(b)(6) motion does not test the merits of the claim. The test is whether plaintiff adequately stated a claim. Wright & Miller, Federal Prac. & Proc. Civil 3d § 1357.

**3.** ***Rule 8(a)(2) Liberal Pleading***

"The [District Court's] departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because [plaintiff] has been proceeding, from the litigation's outset, without counsel. A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully

**25**

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2D 1081 (2007) (cleaned up). See also, *Dixon v. Thom*, No. 11 Civ. 5901 (TPG) (S.D.N.Y. Jan. 11, 2013) *(defendant's motion to dismiss denied)*.

### *Summary of Arguments*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 US 42 , 48 (1988). "There are no material facts in dispute in this case," is clearly stated in district court's opinion (A11; ECF65p1). However, contrary to the court's statement is the court's conflagration of attributions to plaintiff when in fact, the conclusory, unsupported statements are quoted from Newbury's brief (A90; ECF18).

Another criticism expressed by district court is an insufficiency where applying the undisputed material facts to Counts One through Four is declared unsupported. (A14; ECF65 p4). For example, the court has difficulty understanding the constitutional claims in relation to the undisputed material facts (A13-14) and the tie-in to 42 USC §1983. And further, Judge Williams states,

**26**

"Later, she also makes reference to the First Amendment, but without any accompanying argument or even a clear assertion that her First Amendment rights have been violated, and the so the court will not address this reference."
Footnote 6 on page 4 (A14; ECF65 p4)

Judge Williams confused CGS §52-410 as a "civil contempt statute" (A14; ECF65 p4) when in fact §52-410 is explained earlier on in the undisputed material facts section as an arbitration statute (A30 ¶43).  Thus, the Circuit lacks the benefit of an adequate reasoning by district court for dismissal.  See *Lucas v Miles,* 84 F.3d 532, 535 (2d Cir.1996).

Plaintiff was also erroneously accused of negligence in failing to respond to counsel Kryzanski's motion to dismiss (A11; ECF65 p1).  The statement is false.  Plaintiff filed a timely response, objection to motion to dismiss and motion for partial summary judgment (A213-313; ECF64, 64-1 - 64-15), which is clearly on the docket.  Whether a Chambers' staff error or an overlook by the judge himself, such accusation of negligence should not stand and requires correction on the record.  Chambers' staff may be new as is Judge Williams to the Bench.  But labeling a party negligent to respond requires a thorough verification before publishing such a derogatory accusation on the permanent record.  The footnote was careless and needs to be retracted.

From all of this, the issue is one of greater clarity, whether from plaintiff, Judge Williams or Chambers staff.  Dismissal is unwarranted.  District court failed

**27**

to provide plaintiff the opportunity to amend.  Plaintiff respectfully moves the Circuit to consider and consent.

The other jurisdictional issues, Commerce Clause and *Rooker-Feldman,* are briefed.  *Infra 28-36.* These issues are discussed, analyzed and resolved favoring jurisdiction.

### Issue 1        District Court failed to properly consider all the facts.

### a.        CCC's contract with Safeco, where CCC provides internet digital and mobile permissive technology, is not a contract involved in the "business of insurance".

"The power of Congress over interstate commerce is not confined to the regulation of commerce among the states but extends to activities that have a substantial effect on interstate commerce."  *Nat. Fedn. of Indep. Business v. Sebelius*, 567 US 519, 132 S. Ct. 2566, 2586  (2012).  See also, *United States v Darby,* 312 US 100, 118-19 (1941).

In the context of motor vehicle physical damage, this is a matter of first impression.  Plaintiff's complaint alleges defendant insurance companies and their agents identified here, concealed CCC internet digital-generated interactive reports specific to plaintiff's vehicle and falsified those reports to support pre-determined values favorable to their goals.  The pre-determined values were adjustments which significantly lowered the dollar value on the appraisal side and significantly increased the dollar value on the repair side.  Plaintiff further alleges the falsified

**28**

reports and the acts which created them, failed to comply with Connecticut statutes governing motor vehicle valuations and physical damage repairs.

The defendants disagreed citing regulation of the *"business of insurance"* is barred under the McCarran-Ferguson Act. District court agreed and dismissed plaintiff's case for lack of federal jurisdiction. In support, district court relied upon Footnote 18 narrative found in *Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205 (1979), a case also cited by plaintiff in support for interstate commerce. However, Judge Williams' Footnote 18 narrative is misleading. Judge Williams found,

> *See Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 219 n.18 (1979) ("[Section 1012 of Title 15 of the United States Code] operates to assure that the States are free to regulate insurance companies without fear of Commerce Clause attack."). Therefore, if Plaintiff's claims deal with the business of insurance, as she expressly states they do, then they are claims for a state court to adjudicate, not a federal district court. Plaintiff's first argument therefore fails.

(A15; ECF65 p5).

The published US Supreme Court Syllabus of *Grp. Life & Health Ins* reads,

> "The respondents, 18 owners of independent pharmacies in San Antonio, Tex., brought an antitrust action in a Federal District Court against the petitioners, Group Life and Health Insurance Co., known as Blue Shield of Texas (Blue Shield), and three pharmacies also doing business in San Antonio. The complaint alleged that the petitioners had violated § 1 of the Sherman Act, 15 U. S. C. § 1, by entering agreements to fix the retail prices of drugs and pharmaceuticals, and that the activities of the petitioners had caused Blue Shield's policyholders not to deal with certain of the respondents, thereby constituting an unlawful group boycott. The trial court granted summary judgment to the petitioners on the ground that the

challenged agreements are exempt from the antitrust laws under § 2 (b) of the McCarran-Ferguson Act, 59 Stat. 34, as amended, 61 Stat. 448, 15 U. S. C. § 1012 (b), because the agreements are the "business of insurance," are "regulated by [Texas] law," and are not "boycotts" within the meaning of § 3 (b) of the Act, 59 Stat. 34, 15 U. S. C. § 1013 (b). 415 F. Supp. 343 (WD Tex.). **The Court of Appeals for the Fifth Circuit reversed the judgment. Holding that the agreements in question are not the "business of insurance"** within the meaning of § 2 (b)." *Id* at 207-08. "Judgment of the Court of Appeals Court is affirmed." (Emphasis added.)
*Group Life & Health Ins. Co., supra*, 440 U.S. at 233.

The Supreme Court employed a, "three part test for determining whether a particular practice is a part of the *business of insurance*.

(1)  whether the practice has the effect of transferring or spreading a policyholder's risk;

(2)  whether the practice is an integral part of the policy relationship between the insurer and the insured;

(3)  whether the practice is limited to entities within the insurance industry."

Here in Connecticut, the law requires third-party providers of valuation services to be independent and not part of the insurance policy nor part of the insurance company.  CCC is registered as an independent third-party contract provider of *appraisal* and *repair estimates.* On this declared basis, CCC's registration was approved by the state Insurance Department.

Defendants LMH, LMI and Safeco, among others, entered into a contract with CCC where CCC would provide digital and mobile permissive technology which would generate reports on the value (*appraisal*) of a motor vehicle involved in a physical damage loss insured under the insurance policy (A334-349). The CCC

**30**

contract also called for internet digital and mobile permissive technology to generate reports on the cost of physical damage repairs (*repair estimate*) (A351-360). Statutorily, if the *appraisal* value plus *scrap value* was lower than the *repair estimate,* Connecticut law required a *constructive total loss* where the insurance company is required to pay the insured the *appraisal* value plus instead of having the car repaired.

Simply put, the CCC contract (1) "do[es] not involve any underwriting or spreading of risk, but [is] merely [a contractual] arrangement for the purchase of goods and services…" See *Group Life & Health Ins. Co., supra*, 440 U.S. at 214. Number (2), the practice of generating digital internet reports is designed not for the benefit of the policyholders but to provide shortcuts in the claims handling process which shortcuts have, as here, widened the opportunities for fraud against insureds. CCC services are neither directed at, nor necessary for, the protection of policyholders. CCC's own declaration as an independent third-party contract provider of valuation services bears this out. And (3), CCC's SaaS are targeted and sold to a number of industries including, repair facilities, automotive manufacturers, parts suppliers, lenders, and more. *Infra 13.*

With CCC internet technology, LMH, LMI and Safeco effectively know immediately whether to repair or pay off the policyholder and dispose of the

damaged vehicle post-haste thus reducing time and labor accordingly.  Thus, as in

*Grp. Life & Health,* the CCC contract enables insurance companies,

> "to minimize cost and maximize profits.   Such cost-savings arrangements
> may well be sound business practice, and may well inure ultimately to the
> benefit of policyholders in the form of lower premiums, but they are not the
> "business of insurance."

*Id* at 214.

CCC's incestuous relationships with the entities to which contract services are sold,

does not place CCC in the *"business of insurance."*  CCC internet digital and

mobile permissive technology, has a substantial effect on interstate commerce and

is, therefore, subject to federal jurisdiction under the Commerce Clause.  The

contract between Safeco and CCC, therefore, is not the *"business of insurance."*

Case law in the Connecticut district courts and this Second Circuit bear this

out.  See,

*Cf. CTS Corp. v. Dynamics Corp of America,* 481 US 69, 88-89, (1987).
"Generally speaking, the Commerce Clause protects against inconsistent
legislation arising from the projection of one state regulatory regime into the
jurisdiction of another State.   See also, *Healy v Beer Institute Inc*, 491 US
324, 337 (1989).

*Am. Booksellers Found. v Dean*, 342 F.3d 96, 103 (2d Cir.2003).
 "Because the internet does not recognize geographic boundaries, it is
difficult, if not impossible, for a state to [adjudicate] internet activities
without projecting its [law on]to other states."

*Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 115 (2d Cir.2001).
"[T]hey lack the traditional earmarks of insurance. The [Supreme] Court
stated that, we conclude that the concept of insurance involves some
investment risk-taking on the part of the company." (cleaned up.)

*McNichols v. Geico General Insurance Co,* No.3:20-CV-01497 (KAD) (D.Conn.July 21,2021).

> "[T]here can be no doubt that an automobile insurance policy is a contract that affects interstate commerce."

The district court's finding for dismissal on this issue was based upon incomplete and misleading conclusions of *Grp. Life & Health Ins. Co. v. Royal Drug Co.*, *supra.* Dismissal was improper and requires correction.

### b.  *Rooker-Feldman is inapplicable to this matter.*

Safeco's Newbury raised res judicata and collateral estoppel issues under Rooker-Feldman doctrine. District court neither discussed nor analyzed these issues. However, plaintiff includes *Rooker-Feldman* to preserve plaintiff's rights and prevent the presumption of forfeiture, abandonment or waiver of argument. In *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010), to assert res judicata, four requirements must be met.

*1. Plaintiff lost in state court.* This federal action was filed October 5, 2021. The state action was permanently stayed on Newbury's motion and remained so when this action was filed. Newbury's motion was primarily to suppress disclosure of known evidence and to suppress any new evidence discovered. New evidence was the existence of CCC and the falsifying of documents which violated statutory requirements. Plaintiff was denied her constitutional right of meaningful access, a liberty interest. The meaningful access right imposes an affirmative duty

**33**

on the state as a matter of due process which was the *duty to disclose evidence.*
State court dismissed plaintiff's complaint June 2, 2022. Appellate appeal is
pending. Thus, No.1 must be answered to the contrary because of Judge Stevens
concerted effort with defendants to suppress evidence forever.

2. *Plaintiff complains of injuries caused by the state court judgment.*
None of plaintiff's allegations here were considered by state court nor pled.
Plaintiff seeks compensation for due process harms under 42 USC §1983 pursuant
to *Taggart v. Lorenzen,* 139 S. Ct. 1795, 204 L.Ed. 2D 129, 587 US (2019).
Simply put, plaintiff complains of defendants' negligence in the application of CGS
§52-410, an arbitration statute which requires the filing of a separate action to
compel. The intentional disobedience of §52-410 and the abuse of the judicial
process to gain collateral advantage over questions of law are pled here.

3. *Plaintiff invites [federal] court review of the judgment.* This federal
action was filed October 5, 2021, when the permanent stay was enforce. State court
refused to adjudicate any issue pled on the merits. The judgment of dismissal was
rendered June 2, 2022. There is no merits judgment to review.

4. *State court judgment entered before the federal suit commenced.* This
is inapplicable. This federal action was filed October 5, 2021. The state action was
dismissed June 2, 2022. while under a permanent stay.

**34**

There is no direct challenge to the state action here. Newbury's brief (A90; ECF18) failed to properly discuss and analyze the four elements. Newbury's motion to dismiss is rife with misinformation. Case reliance is outside the Second Circuit. Case citations are all *final judgment on the merits after trial* on issues not dispositive with the issues in this case. Plaintiff's objected (A117; ECF34).

Newbury's arguments for *Rooker-Feldman* are conclusory and lack any reference to facts on the record which would be dispositive. See,

> "This lawsuit seeks to overturn Judge Stevens' orders," (A105; ECF18p16);
> "[Case is] inextricably intertwined with a challenge to the merits." *Id;*
> *"*[This is a] unreviewable state court determination." *Id;*
> "...[D]efendants… have nothing to do with the case." *Id;*

Missing, though, is the *who, what, when, where, how and why,* basic facts explained to reach the conclusions made. Newbury's strategy is to deflect and pressure to suppress, a strategy to shut down plaintiff's right to a federal forum. Newbury's clients, the insurance company defendants here, represent extremely deep pockets with global accessibility.

Judge Williams failed to discuss and analyze the Circuit's four elements also. Instead, the judge improperly attributed Newbury's misrepresentations and false attributions as factual history and then used those against plaintiff to support dismissal.

Newbury and the insurance defendants are known in state trial and reviewing courts for fraud on the courts.  See most recent, i.e., *Dorfman v. Smith*, (SC 20556) (Conn. Mar. 29, 2022).  This is because in Connecticut, the judicial system declares all members of the Bar immuned.  This absolute immunity, however, contradicts United States Supreme Court precedent in *Taggart, supra*.  *Infra 53-55*.  State court relied on Newbury, Berchem and Kryzanski's misrepresentations, all of which resulted in dismissal, absent any adjudication on necessary dispositive questions of law which state court was judicially required to hear.  But for the collective actors' pressure to suppress led by Newbury, state court would not have been fraudulently induced and coerced into imposing criminal sanctions against plaintiff.  State court viewed *Commissioners of Court* as judicial equals where pro se plaintiff never could be.   How could she?  Plaintiff is pro se, female and in her senior years.

Simply put, the state action was stayed permanently a week before plaintiff's judicial settlement conference.  A permanent stay is a sanction to suppress evidence already on the record and evidence to be on the record revealed during discovery.  *Infra 42*.  No judgment existed prior to filing this federal action and no judgment on the merits still does not exist as of the date of this brief.

"[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."*McClellan*  v. *Carland,* 217 US 268, 282 (1910);  accord, *Doran v. Salem Inn, Inc.*, 422 US 922,

928 (1975);  *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 US 281, 295

(1970).  Plaintiff has not sought the federal court to undo a judgment because there

is no judgment on the merits.  The state court action remains pending Appellate

appeal on the intentional suppression of evidence by a judicial actor, a matter of

first impression.

"Where a party alleges a conspiracy to engineer the party's defeat in state

court, *Rooker-Feldman* does not bar federal proceedings;  a party cannot be forced

to litigate in a rigged system."*Great W. Mining & Min. Co.* **, 615 F.3d** 159, 171 (3d

Cir.2010).  Dismissal by Judge Williams was incorrect and improper and requires

correction.

**Issue 2        *District court created conflicts over proper legal standards under
                42 USC §1983.***

Plaintiff alleges the defendant attorneys, acting on behalf of their respective

law firms and as agents for defendant principal insurance companies, *pressured*

state court *to suppress* evidence.  And as the record confirms, state court did

judicially perform in a manner which was clearly advantageous to all defendants

and detrimental to plaintiff (A258-267).

Here, Judge Williams said plaintiff's allegations fail to support a  42 USC

§1983 action.  But, Judge Williams failed to provide any analysis of how he came

to the conclusion reached.  The court cited *Blyden v. Mancusi*, 186 F.3d 252, 264

**37**

(2d Cir. 1999). *Blyden* was a class action filed as an aftermath of Attica prison riots from the 1970's. The Circuit concluded the liability found was invalid because liability was not attributable to specifically named individuals. And, "absent a valid finding of liability, the damage awards to Smith and Brosig must be reversed." (A14;ECF65 p4). Plaintiff's action is not a class action. Nor is the action anywhere near a finding of liability let alone an award of damages. Plaintiff's complaint clearly attributes acts alleged to specific defendants.

Further on (A15; ECF65 p5), the court incorrectly attributed plaintiff saying, "Counsel Defendants are agents of the judiciary, since they are all licensed attorneys, which makes them state actors," when in fact, the statement is quoted from Newbury (A107; ECF18 p18). Judge Williams' citation of *Szymonik v. Connecticut*, 807 F. App'x 97, 102 (2d Cir. 2020) supports Newbury and perhaps is the court's reliance. However, the citation appears on page 6 where statements are scattered among pages 4 and 5.

And next, "[S]he appears to argue that because the Counsel Defendants are also agents of the Corporate Defendants, then the Corporate Defendants are also acting under color of state law where the Counsel Defendants are acting under color of state law." (A15; ECF65p5). The attribution to plaintiff, once again, is incorrect and conclusory of Newbury's assertions (A107; ECF18 p18). Other reliances by the court, *Green v. Bartek*, No. 3:05CV1851 (SRU), 2007 WL

**38**

4322780, at *3 (D. Conn. Dec. 7, 2007) *(dismissing Section 1983 claim against plaintiff's appointed attorney in Family Court where... no facts support this claim)* and *Prince v. Jelly*, No. 3:17-CV-01284 (SRU), 2017 WL 5574273, at *4 (D. Conn. Nov. 20, 2017) *(plaintiff's malpractice claim would not arise under federal law),* are obscure cases and lack precedent.

Simply put, district court required plaintiff to allege justification for pleading 42 USC §1983, something not required to support any causes of action alleged. District court subjectively rejected plaintiff's facts alleged but considered Newbury's misrepresentations persuasive contrary to precedent which requires all facts alleged by plaintiff to be considered true. Plaintiff was denied any opportunity to present evidence regarding her §1983 arguments. Thus, dismissal on the pleadings was not appropriate and cannot stand.

Judge Williams did cite *Dennis v. Sparks*, 449 US 24 (1980). *Dennis* supports plaintiff's argument here of how state court acquiesced to pressure exerted by defendants which made state court an aiding and abetting state actor. *Infra 55.* In *Dennis,* the Fifth Circuit ruled, "...there was no good reason in law, logic, or policy for conferring immunity on private persons who persuaded the immune judge to exercise his jurisdiction corruptly." *Id* at 27.

The US Supreme Court granted the *Dennis* petition for certiorari, 445 U S 942, and affirmed. "Hence, private action may be converted into state action if a

**39**

state actor conspires with a private individual to deprive a plaintiff of constitutional rights." *Id* at 29.  See plaintiff's complaint (A25; ECF1¶18).  See also, *Luger v Edmondson Oil Co. Inc,* 457 US 922, 948, Fn5 (1982) *(a §1983 action, Court found plaintiff presented a valid cause of action against a corporate creditor and president who acted under color of state law).*

### a.    *Plaintiff's complaint is pled with particularity*

Plaintiff's complaint not only identifies specific defendants but attributes the defendants to particular acts (A27-33; ECF1 ¶¶28-55).  Simply put, the acts of the collective defendants and the state judge resulted in dismissal.  Plaintiff not only lost her lawsuit but suffered a taking of her automobile, a property interest, without compensation.  *Infra 49.*  "To plead a claim under [42 USC § 1983], a plaintiff must allege that she was injured by a state actor or **a private party** acting under the color of state law."  *Ciambriello v Nassau,* 292 F.3d 307, 323 (2d Cir.2002) (Emphasis added).  *Infra 44*.

### b.    *The collective defendants acted in concert with the state judge.*

"To state a claim against a private entity on a Section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Thomas v. City of New York,* No. 17-cv-06079 (ARR)(JO) (E.D.N.Y. Nov. 5, 2018).  The public

**40**

record of the state action docket [3] demonstrates the collective defendants

acted in concert with the state judge in one or more of the following ways. [4]

      a.    permitted the state court to speak on their behalf (A76);

      b.    permitted the state court to assume their defense when no defense or objection necessary to the matter at hand was filed by the defendant (A32 ¶52; A77).

"To state a claim for conspiracy under Section 1983, a plaintiff must allege

(1) an agreement between a state actor and a private party;  (2) act in concert to

inflict an unconstitutional injury; and  (3) an overt act done in furtherance of that

goal causing damages." *Buari v. City of New York*, 530 F. Supp. 3D 356, 393

(S.D.N.Y. 2021).  Here, the state actor is state court; the private parties are the

collective defendants, who acted in concert to deprive plaintiff of her liberty

interest by suppressing evidence of intentional, planned destruction of her personal

property through the falsification of CCC generated reports which software was

specifically designed to be manipulated by insurers solely for self-enrichment.  The

following facts are undisputed (A11; ECF65 p1).

---

[3]    A court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6) including arrest reports, criminal complaints, indictments, and criminal disposition data." *Vasquez v. City of New York,* 99 Civ. 4606(DC), 2000 US Dist. LEXIS 8887, at *3 (S.D.N.Y. June 29, 2000).

[4]    The list is not exhaustive but rather examples for purposes of this appeal.

a.　State judge ordered expensive and unafforable binding, unrestricted arbitration in substitution for plaintiff's judicial action to suppress evidence, prevent settlement and avoid jury trial on questions of law (A29 ¶39);

b.　ordered a permanent stay to suppress evidence on the record and prevent introduction of discovery evidence (A29 ¶40b);

c.　stayed action to prevent plaintiff's scheduled judicial settlement conference a week before such settlement was to commence (A30 ¶40e);

d.　refused to respect *stare decisis* and conform to the Appellate order which found insufficiency for compelling §52-410 but sufficiency for stay (A74);

e.　denied plaintiff's multiple pleas for relief (A31 ¶48; A32 ¶51);

f.　imposed criminal fines of $75 per day to bankrupt plaintiff into arbitration irrespective of the Appellate's insufficiency of §52-410 found (A40 ¶71);

g.　intimidated and harassed plaintiff during oral arguments because of self-representation and ordered plaintiff to find an attorney (A32 ¶52j; A37 ¶66);

h.　labeled plaintiff's objections and briefs frivolous and meritless thereby supporting state court's refusal to discuss and analyze her questions of law (A83).

"A private actor may be considered to be acting under the color of state law for purposes of §1983 if the private actor was, "a willful participant in joint activity with the State or its agents.  This potential liability also applies to a private party who conspires with a state official to violate the plaintiff's constitutional rights...."

*Young v Suffolk County,* 705 F. Supp. 2D 183, 195-96 (E.D.N.Y. 2010).  See also,

**42**

*Fisk v Letterman,* 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) *(private parties act under color of state law if they jointly participate or conspire with a state actor to violate an individual's federal rights [under Takings Clause where plaintiff's property interest was taken without just compensation]).*

In *Gomez v. Toledo*, 446 US 635, 640 (1980), the Supreme Court found under §1983, the plaintiff is not required to assert the defendant was acting in bad faith. Rather, a defendant asserting immunity as a defense, the defendant bears the burden of proving the defense. The Court concluded, "we see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint the defendant acted in bad faith." *Id*. A plaintiff must allege only two elements. One, some person deprived [her] of a federal right; and two, the person who deprived [her] of the right acted under color of state... law. *Id* at 640.

Plaintiff's complaint is sufficient and pleads with particularity for purposes of Rule 12(b). District court erred in failing to consider all the facts which court declared undisputed. If considered, the consideration was inadequate to support dismissal.

**c.    *Plaintiff was deprived of due process and her constitutional rights.***

The due process clause of the Fifth Amendment provides in relevant part, "No person shall... be deprived of life, liberty, or property, without due process of law…" *United States v. Salerno*, 481 US 739, 746 (1987).

**43**

The due process clause protects individuals against two types of state actor action.  Substantive due process embodies society's desire to, "prevent government from abusing [its] power, or employing it as an instrument of oppression."  *Caiola v. Saddlemire,* Civil Action No. 3: 12-CV-00624 (VLB) (D. Conn. Mar. 27, 2013) citing *Collins v Harker Heights,* 503 US 115, 126 (1992).  See also, *Rochin v California,* 342 US 165, 172 (1952).  Or when a state actor interferes with rights implicit in the concept of ordered liberty.  See *Palko v Connecticut,* 302 US 319, 325-26 (1937)*.* When a state actor deprives a person of life, liberty, or property and survives substantive due process scrutiny, implementation or procedural due process must be fair.  See *Mathews v Eldridge,* 424 US 319, 335 (1976)*.*

The standard for determining procedural due process is,  "[1] whether there exists a liberty or property interest of which a person has been deprived, and [2] whether the procedures followed by the [court] were constitutionally sufficient." *Swarthout v Cooke,* 562 US 216, 219 (2011)*.*  "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States."  *Hewitt v Helms,* 459 US 460, 466 (1983).

**d.**　　**Plaintiff's 'private judicial action' became a 'state action'.**

In *Tancredi v Metropolitan Life Ins Co Inc, supra.*, this Circuit identified requirements for a show of state action.

**44**

"Under color of law has consistently been treated as the same thing as the state action required under the Fourteenth Amendment. Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that [her] constitutional rights have been violated must first establish that the challenged conduct constitutes state action. When analyzing allegations of state action, we begin by identifying the specific conduct of which the plaintiff complains. In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be fairly attributable to the state. *Id.* at 50, 119 S.Ct. 977. Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. State action may properly be found where the state exercises coercive power over, is entwined in [the] management or control of, or provides significant encouragement, either overt or covert to, a private actor, or where the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies." *Id* at 312-313 (cleaned up).

Here, plaintiff alleges (A28-34),

1.      On an untimely motion from Newbury, state court *(Stevens, J)* abruptly and permanently stayed plaintiff's judicial action;

2.      *Stevens* did so to preclude the judicial settlement conference scheduled for the following week with a different judge;

3.      On motion from Newbury, *Stevens* issued an ordered for expensive, binding and unrestricted arbitration which motion failed to comply with CGS §52-410 and when no arbitration agreement existed;

4.      *sua sponte,* prevented submission of discovery evidence for settlement;

5.      *sua sponte,* struck down plaintiff's motion for compromise which already expired by operation of law;

**45**

6.      granted Newbury, Berchem and Kryzanski broad and sweeping protective orders to suppress plaintiff's evidence;

7.      precluded plaintiff from filing a certificate of closed pleadings;

8.      refused to conform to the Appellate order upon remand  which found *Stevens* order procedurally and legally insufficient to compel arbitration but sufficient as to the permanent stay;

9.      refused to order Newbury to comply with the clear meaning of §52-410 by stating, *"Safeco has nothing further to do."*;

10.      substituted discretion in lieu of *stare decisis* and precedent *Success, supra*;

11.      refused to adjudicate questions of law which required resolution pursuant to *Klass v. Liberty Mut. Ins. Co.*, 267 A.3d 847, Fn3, 341 Conn. 735 (2022);

12.       coerced, cajoled, intimidated, screamed and otherwise caused plaintiff to suffer embarrassment and humiliation in front of others during remote hearings in order to force plaintiff to *find an attorney* and surrender her appeal rights permitted under a compliant CGS §52-410 order;

13.      imposed criminal fines of $75 per day payable to the court to bankrupt plaintiff into an unlawful, expensive arbitration estimated at or around $10,000 where Safeco's estimate of repair was $4,834.75;

14.      acted *sua sponte* as the collective defendants' counsel and spoke on their behalf whether such counsel was present or not at a hearing and whether such counsel moved for a particular action or not;

15.      substituted discretion for statutory construction on questions of law contrary to precedent state Supreme Court decisions thereby refusing to articulate denials issues;

16.      dismissed plaintiff's complaint for not complying with the arbitration order the Appellate Court found insufficient;

**46**

17.    dismissed plaintiff's complaint for failing to pay to the court, accumulated criminal fines at $75 per day when such fines run afoul of the Fifth Amendment Double Jeopardy;

18.    dismissed plaintiff's complaint improperly finding her efforts to seek Appellate review as frivolous and meritless and only for purposes of delay when the reviewing courts actually reasoned lack of a final judgment.

The conduct enumerated is *fairly attributable to the state* because the conduct was performed by *Stevens*, a duly appointed Superior Court judge.  The motions filed by Newbury and supported by the other defendants, triggered the conduct enumerated to the extent *Stevens* then triggered his own conduct without the necessity of defendants filing anything.   *Stevens* exercised *coercive power* over plaintiff which defendant state actors *significantly encouraged* both *overtly and covertly.*  Defendants operated as *willful participants* in the *judicial activity with Stevens* and, thus, were state actors.

Simply put, under color of state law, the state actors invoked an untimely CGS §52-410 which *Stevens* granted.  The invocation misapplied the provisions of the arbitration statute. The state actors did so for two reasons.  First, to remove plaintiff's state action beyond the reach and authority of the state judicial system. And at the same time, suppress plaintiff's appeal rights as provided when a §52-410 order is granted.  And second,  place the facts and events which precipitated the state action outside public awareness and judicial transparency.  The state actors did not anticipate plaintiff's appeal nor the Appellate order finding misapplication of

**47**

the statute.  Thus, when the matter returned to *Stevens,* he refused to conform to the Appellate order.  To overcome *stare decisis, Stevens* invoked inherent discretionary authority in lieu of required conformity.  For more than two years thereafter, the state actors in concert with *Stevens,* coerced and intimidated plaintiff. The end result was monetary criminal fines and dismissal.

Plaintiff further alleges the collective state actors' interfered with plaintiff's contractual insurance rights under plaintiff's insurance policy issued by Safeco (A58-64).  The result of the deliberate interference caused vandalism of plaintiff's vehicle while in the care, custody and control of one or more of the state actors or their agents (A261 ¶24; A263 ¶41; A389).

The allegations set forth in plaintiff's complaint are undisputed as found by district court (A11; ECF65 p1).

*e.*     ***Eighth Amendment Excessive Fines Claus****e* procedurally requires, "...a proper hearing on the...sanctions." *Fattibene v Kealey,* 18 Conn. App 344, 352, 558 A.2d 677 (1989).  *"*There must be fair notice and an opportunity for a hearing on the record." *Id.* At 353.  There was none.  The court "...need[s] to establish a causal link between misconduct and fees when acting under inherent authority." *Roadway Express, Inc. v. Piper,* 447 US 752, 764 (1980).  State court did not do so.

**48**

**f.** ***The Fifth Amendment Double Jeopardy Clause*** provides, no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." See *Brown v. Ohio*, 432 US 161, 164 (1977). Double jeopardy prohibits successive prosecutions as well as cumulative punishment. *Id.* at 165-66. The imposition of a permanent stay in addition to fines imposed of $75 per day is violative of the Fifth Amendment Double Jeopardy Clause.

**g.** ***Fifth Amendment Takings Clause*** requires just compensation when a government action effectively takes private property without a legitimate state interest. See *Agins v City of Tiburon*, 447 US 255, 260 (1980). The state actors interfering conduct in the state action in concert with *Stevens,* resulted in intentional and criminal destruction of plaintiff's motor vehicle property interest. The destruction constituted an unlawful taking violative of the Takings Clause of the Fifth and Fourteenth Amendments without just compensation.

State court's dismissal failed to properly address the issue of plaintiff's vehicle and the deteriorated physical condition. Such judicial neglect effected a taking and requires just compensation along with the deprivation of economic beneficial use of the car, a period of close to four years. See *Lucas v South Carolina Coastal Council,* 505 US 1003, 1019 (1992).

**49**

**h.** **To prevail on a First Amendment Free Speech** liberty interest plaintiff must prove: (1) she has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by her exercise of the right; and (3) defendants' actions effectively chilled the exercise of her First Amendment right. *Connell v Signoracci,* 153 F.3d 74, 79 (2d Cir.1998).

Judge Williams found, "There are no material facts in dispute in this case." Thus as to No.1, district court affirmed plaintiff's liberty interest in the form of her complaint. As to No. 2, the harm imposed in the state action, the permanent stay of her complaint to prevent settlement or jury trial of the undisputed facts is a result of concerted actions of state actors. Once *Stevens* stayed the action permanently with defendants' concerted efforts, the action no longer constituted a private action but became a state action for purposes of 42 USC §1983.

As to No.3, the state action docket shows plaintiff's persistent efforts to present remedies within the law. But those remedies were ignored. With or without defendants' responses, *Stevens* spoke on behalf of, and performed as the defense counsel for the defendant state actors. *Stevens* consistently invoked discretion in addition to the cruel and abusive outbursts. Thus, *Stevens* reinforced the chilling of plaintiff's exercise of free speech.

50

## I.   *Public Awareness Concerns*

*Stevens* used arbitration as a means to an unlawful and unconstitutional end. *Stevens* invoked discretion when he refused to adjudicate questions of law and allegations of fraud.  His doing so prevented public awareness of the fraudulent activities ongoing as a standard business practice in the state's motor vehicle physical damage insurance industry.

The fraud is not confined to Connecticut, either.  Defendant insurance companies and many others under the umbrella of LMH issue policies nationwide and insure multi-millions of cars.  And plaintiff's lawsuit is not the only one who raises issues about CCC's fraudulent reports and the illegal incestuous relationship practiced within the insurance industry.  Thus, preventing public awareness allows the offenders to reap billions of dollars in claims savings though the falsification of appraisals and repair estimates at the expense and detriment of insureds.  See *FTC v. CCC Holdings Inc.*, 605 F. Supp. 2d 26 (D.C. 2009).

Silencing plaintiff with a permanent stay is no different than a court ordering a court room hearing closed or a docket sealed.  The end goal is the same, a suppression of evidence to prevent public awareness.  The arbitration order was a means to remove plaintiff and her evidence out of the judicial setting and off the docket.  Such judicial tactics tread on the public's right to know and First Amendment free speech.

**51**

*Stevens* abused his judicial power and successfully employed the power as an instrument of oppression. Dismissal here should not stand. Due process requires plaintiff to continue her district court action through to the merits and obtain sufficient relief from the significant, long-term prejudicial harms suffered.

**Issue 3       District court misapprehended facts in avoidance of stare decisis.**

*"Stare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (cleaned up). "Considerations in favor of stare decisis are at their acme in cases involving property and contract rights, where reliance interests are involved." *Id* at 828.

"[T]he doctrine of *stare decisis* is of fundamental importance to the rule of law. To be sure, *stare decisis* is not an inexorable command, and our considered practice has not been to apply *stare decisis* as rigidly in constitutional cases as in nonconstitutional cases. But, even in constitutional cases, the doctrine carries such persuasive force that we have always required a departure from precedent to be supported by some special justification." *Id* at 842 (cleaned up). See also,

> *Hohn v. United States*, 524 U.S. 236, 252-53 (1998) *(this Court's decisions are binding precedent until it sees fit to reconsider them)* (cleaned up);

**52**

*Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532 (2012) (per curium) *(granting summary reversal where lower court's interpretation of federal law was both incorrect and inconsistent with clear instruction in the precedents of this Court)*.

*James v. City of Boise*, 577 U.S. 306, 307 (2016) *(granting summary reversal and emphasizing that lower courts are bound by this Court's interpretation of federal law)*;

*Wearry v. Cain*, 577 U.S. 385, 395 (2016) (per curium) *(noting that this Court has not shied away from summarily deciding fact-intensive cases where, as here, lower courts have egregiously misapplied settled law)*.

### a. *Taggart and civil contempt.*

Safeco's counsel Newbury acts on behalf of the Howd Ludorf law firm for all three defendant insurance companies. Berchem acts on behalf of Berchem Moses law firm and Kryzanski acts on behalf of himself as sole legal practitioner. All three are attorneys with unclean hands. Newbury is kingpin with deep pockets. Unclean hands conduct is known to be reckless, unfair and unreasonable. *O & G Industries v American Home Assur.*, 254 A.3d 955, 964, 204 Conn.App. 614 (2021). As pled in plaintiff's complaint, Newbury exercises a deliberate, disruptive strategy which conflicts with an implied covenant of good faith and fair dealing. *Pacelli Bros. Transportation Inc v Pacelli,* 189 Conn. 401, 407, 456 A.2d 325 (1983) *(utmost good faith equates with fair dealing).* The facts of the record speak of inequitable conduct. "Inequitable conduct is a breach of the… duty of candor and good faith during proceedings by misrepresenting or omitting material

**53**

information…" See *Therasense Inc v Becton Dickinson & Co.,* 649 F.3d 1276, 1287 (Fed.Cir.2011).

Attorneys and their law firms who fall far short of a standard of good faith and fair dealing were discussed in *Taggart v. Lorenzen*, *supra.* *Taggart* is a bankruptcy discharge of debt case. The discharge operates as an injunction against a creditor from collecting on the debt. The Supreme Court held, "A court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Taggart,* 139 S.Ct.1800-04. *Taggart* also cited the remedy for those, like Newbury, Berchem and Kryzanski here, who follow the same contemptible path and fall far short by acting in bad faith. Taggart is dispositive here.

> "In cases outside the bankruptcy context, this Court has said that civil contempt should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct. This standard [fair ground of doubt] is generally an objective one. A party's subjective belief that [he] was complying with an order ordinarily will not insulate [him] from civil contempt if that belief was objectively unreasonable. Subjective intent, however, is not always irrelevant. *Civil contempt sanctions may be warranted when a party acts in bad faith…"* (Emphasis added.)

*Taggart,* 139 S.Ct.at 1801-02 (cleaned up).

The doctrine of *stare decisis,* the relationship under law with *Taggart* taking into consideration plaintiff's undisputed allegations and the facts on the record have not been addressed by district court. District court's failures to properly consider the entire record and consider plaintiff's allegations as true required under Rule

12(b)(6) improperly substituted precedent with piecemeal, subjective indifference which should not stand.

### b.  *Aiding and abetting civil contempt.*

Attorney Berchem represented Traynor in the state action throughout.  In this action, Berchem and law firm Berchem Moses retained independent counsel. Kryzanski represented Breezy in the state action and here, represents himself.  As previously mentioned, in addition to LMH, LMI and Safeco, Newbury also represents his law firm Howd Ludorf and himself.  Plaintiff's motion to disqualify Newbury from the collective representation because of the adverse effects when obtaining evidence was never considered by district court.  The motion was rendered moot upon dismissal.

In aiding and abetting civil contempt, the issue  is, "whether private civil liability... extends as well to those who do not engage in the manipulative or deceptive practice, but who aid and abet..."  *Central Bank of Denver NA v First Interstate Bank of Denver NA,* 511 US 164, 167 (1994).

Personal-participation liability imposes liability on corporate officers who *authorize* or are the *guiding spirit* to induce others.  Thus, the aider and abettor must have knowledge of the primary violation and be in a substantive position to provide assistance to the primary violator.  *Id* at 168.

**55**

Here, Newbury called the shots from day one. Newbury's refusal to comply with CGS 52-410 irrespective of the plain meaning of the statute and irrespective of complying with the statute in many other cases pending in the same court for the same clients. Newbury's continued refusal to adhere to the state Appellate Court's finding clearly demonstrates his contempt for the rule of law. And instead of exercising reasonableness, Newbury continued to coerce and pressure state court to do just the opposite and ignore the Appellate which the state court did.

Berchem personally or a designated associate and Kryzanski aided and abetted Newbury in their failure to object or otherwise act independently to comply with the rules of the court and laws breached. Most notably is Newbury's pressure to suppress and avoid the judicial settlement conference. Both Berchem and Kryzanski in consideration of their clients could have done so when state court issued the permanent stay. Both could have filed for a relief from stay but did not. Both could have separated from Newbury's deceitful and tortuous acts but did not. Over the course of the state action, neither Berchem nor Kryzanski made any effort to mitigate damage for their clients and bring their clients into compliance with relevant state laws violated. None of this is recognized or considered by district court in the seven-page order of dismissal because the court's fact finding is woefully insufficient.

Newbury, Berchem, Kryzanski and others with their respective law firms, were and continue to be in civil contempt as a result of each, "...bringing pressure of any kind to bear upon [a] public officer [Superior Court judge]… even if that person brought no pressure to bear on the public officer and left the decision to prosecute entirely in the hands of that public officer." *Turner v Boyle*, 116 F.Supp.3d 58, 85 (D.Conn.2015).

Plaintiff's Count Three civil contempt violations require an imposition of contempt sanctions against the defendants. See *Cooter & Gell v Hartmarx Corp,* 496 US 384 (1990). "Civil contempt sanctions may be warranted when a party acts in bad faith…" *Taggart,* 139 S.Ct.1801-02. The standard, *fair ground of doubt*, is dispositive. District court's dismissal fails to properly discuss and analyze any material facts pled which the court found undisputed. District court failed in the performance of judicial duties which failures were unreasonable, avoidable and judicially indifferent to plaintiff's substantive and due process rights.

c. **Counsel Kryzanski 's inexcusable neglect.**

Under 12(b)(6), "...[T]he court may... consider [a document] where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint" *Int'l Audiotext Network Inc v Am.Tel.& Tel.Co,* 62 F.3d 69, 72 (2d Cir.1995).

Kryzanski filed a Rule 12(b)(6) motion to dismiss February 15, 2022 (A208; EFC60).   The memorandum argues, "plaintiff failed to cite any instance which would prove [Kryzanski] committed civil contempt or abuse of process."  End of argument.  Such a conclusory allegation is insufficient to move for dismissal. "[M]ere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Fletcher v. Atex, Inc.* 68 F.3d 1451, 1456 (2dCir.1995).

Apparent from Kryzanski's terse answer and special defense (A206; ECF26), and the conclusory statement of the motion to dismiss, Kryzanski made a strategic decision to ignore his responsibility to the court and not respond to plaintiff's combined objection to motion to dismiss and motion for partial summary judgment filed March 21, 2022 (ECF64, 64-1 thru 64-15).  See *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996).  "[A] counsel who so ignored his responsibility to the Court, could readily be found culpable under the more stringent, bad faith construction of the willfulness standard." *See Schwarz v United States,* 384 F.2d 833, 836 (2d Cir.1967).

Kryzanski's motion to dismiss is extreme in brevity and constitutes deliberate indifference.  "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway v Coughlin,* 37 F.3d 63, 66 (2dCir1994) (cleaned up).  Kryzanski's deliberate indifference to

**58**

what is required pursuant to the local rules of the court is inexcusable neglect.

"Whether neglect is excusable is an equitable determination, taking account of all relevant circumstances surrounding the party's omission, including [1] the danger of prejudice to the [nonmoving party], [2] the... potential impact on judicial proceedings, [3] ...whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *In re Seven Oaks Partners LP,* No. 18-342 (2dCir.Jan.30,2019).

Plaintiff is pro se and sufficiently inexperienced with federal rules and procedures where such brevity failed to sufficiently alert not only plaintiff but the court as well as to the true grounds for dismissal. Kryzanski is an experienced attorney. And, according to the Connecticut judicial website, admitted to the Bar in 1993, *albeit*, with various lengthy involuntary time breaks in his legal practice.

Kryzanski was deliberately indifferent to his responsibility and obligations to the court and acted "with a sufficiently culpable state of mind." *Smith v. Carpenter,*316 F.3d 178, 183-84 (2dCir.2013) (cleaned up). Judge Williams, however, chose to deflect in defense of Kryzanski and falsely accused plaintiff of neglect to justify dismissal.

### c.   *District court omitted material facts on the record.*

On March 21, 2022, plaintiff filed a timely objection to Kryzanski's motion to dismiss combined with a motion for partial summary judgment. The submission

with memorandum of law, complied with Local Rule 56(a)1 statement of facts

supported by affidavit and eleven exhibits as evidence (ECF64, 64-1 thru 15).

Kryzanski failed to controvert any of plaintiff's material facts or respond in any

manner. Kryzanski failed to file a Local Rule 56(a)2 statement. Thus, pursuant to

the local rules, plaintiff's material facts were deemed admitted. Soon thereafter,

April 26, 2022, Judge Williams issued a seven-page decision dismissing plaintiff's

complaint (ECF65), The foundation on which the decision rests, however, is

flawed and should not stand. For relevance, plaintiff requests judicial notice of the

following.

On page 1, Footnote 1 reads in relevant part,

"All the defendants in this action have moved to dismiss the case against
them, and *they all make the same general arguments*. This discussion will
therefore refer to the Motions in the aggregate and will not delve into the
specifics of any particular Motion to Dismiss." (Emphasis added.)

Not to "*delve into the specifics*" obscured Kryzanski's lack of response. The

commingling of defendants' is usually expedient but here, served as an open door

for omissions, misapprehensions and false attributions.

On page 2, Footnote 2, the court adds,

"Plaintiff did not file a response to Defendant Kryzanski's Motion to
Dismiss"

Judge Williams considered himself to be "...thoroughly apprised in the premises

(*sic*)" (A11; ECF65 p1). But how could he be when plaintiff's ECF64 and all

**60**

supporting documents were clearly on the docket yet erroneously omitted from discussion and analysis.   There's a disconnect here which should not have occurred.

Unfortunately, the court's dismissal contains other misapprehensions of facts unsupported by the record.  Conclusions are not only incorrect but reflect Chambers' judicial and intellectual indifference towards plaintiff's due process. *Infra 26-28, 37-39.*

i.e., on page 2 of the dismissal, Judge Williams incorrectly attributes plaintiff stating, "...she asks the court to vacate the orders the state court issued in the underlying action." when in fact, the erroneous *Rooker-Feldman* statement is found in Safeco's Newbury memorandum.

i.e., on page 3, Judge Williams notes, "Plaintiff's claims are somewhat difficult to discern but fails to comment on Kryzanski's deliberate indifference. Fluffing off Rule 56(a)1-2 is no small matter.

i.e., on page 4, the court misconstrues plaintiff's  Count Three as, "Connecticut's civil contempt statute…".  There is no such statute.  Count Three identifies CGS §52-410, an arbitration statute which mandates a specific judicial process to compel arbitration.  Judge Williams unfamiliarity would be expected in view of his singular judicial focus on criminal defense prior to the Bench. However, unfamiliarity would normally be overcome through adequate and careful

research by Chambers staff to provide sufficient supported facts for a reasonable and informed opinion.  This is not what has occurred here.

i.e., on page 5, the court erroneously attributes plaintiff alleging, "Counsel Defendants are agents of the judiciary,".  The court omits any reference to the specific paragraphs in plaintiff's complaint where the inference can be drawn. Such omissions of reference throughout the dismissal only added to Chambers' confusion which resulted in more false attributions of authorship.

Rule 12(b)(6) motion does not test the merits of the claim. The test is whether plaintiff adequately stated a claim.  Wright & Miller, Federal Prac. & Proc. Civil 3d § 1357, *supra*.  But, when the court omits substantial material facts supporting plaintiff's arguments, misapprehends the complaint, misquotes construction, makes incorrect attributions to plaintiff when authorship lies elsewhere and does so without any specific references to a page or paragraph number in a specific document, there is judicial error which requires correction.

d.    ***Plaintiff is entitled to partial summary judgment.***

Plaintiff introduced eleven exhibits as evidence onto the record (A270-393; ECF64, 64-4-15) which support plaintiff's allegations against Breezy.  This was in addition to her memorandum, statement of facts and affidavit  (A215-267; ECF1-3).  As the nonmoving party, Kryzanski failed to introduce any evidence, statements or otherwise dispute any element of plaintiff's material facts introduced.

**62**

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof. The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)…"

*Celotex Corp. v. Catrett,* 477 US 317, 322-23 (1986) (cleaned up).

In *Anderson* v. *Liberty Lobby, Inc.,* 477 US 242, (1986), the same court found,

"Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. And, as we noted above, Rule 56(c) provides that the trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. There is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *supra* at 250.

Omission of ECF64 with related critical analysis and discussion should not have gone unnoticed. Yet, the omission, although glaring, was not the only questionable act exercised by the court. The court docket reflects Judge Williams' clear intent to limit communication with plaintiff. First occurred when the court failed to rule timely on plaintiff's motion to disqualify Newbury. Next, discovery was stayed. Then again, when the dismissal was issued forthright without oral argument. Judge Williams was anxious to dismiss. This intellectual indifference should not be allowed to stand.

*e.*      *In the alternative, plaintiff is entitled to judgment pursuant to Rule 12(c).*

Kryzanski on behalf of Breezy, filed an answer and special defense

November 27, 2021 (A206; ECF26).   The pre-answer motion to dismiss was filed

months later, February 15, 2022 (A210; ECF60).   Kryzanski's Rule 12(b)(6)

motion was not only out of compliance with procedural rules but most important,

was untimely.  The pleadings as to Breezy were closed before Breezy's Kryzanski

moved to dismiss.  Rule 12(b)(6) when filed after the close of pleadings, requires

such an untimely motion to dismiss to be treated as a motion for judgment on the

pleadings under Rule 12(c).   See *Patel v. Contemporary Classics of Beverly Hills,*

259 F.3d 123, 126 (2d Cir.2001).  "The legal standards of review for motions to

dismiss and motions for judgment on the pleadings are indistinguishable".  *Pierce v*

*Underwood,* 487 US 552, 558 (1988);  see also *City of New York v Beretta USA*

*Corp,* 524 F.3d 384, 392 (2d Cir.2008).

Plaintiff's matter requires an adjudication of all facts including objection and

motion for partial summary judgment (ECF64).  The court's indifference to

plaintiff's due process rights should not be permitted to stand.

**64**

### *Conclusion*

For reasons set forth in this brief, plaintiff respectfully requests the Court of Appeals to vacate the district court's order and remand for full review of this action on the merits.

Dated:  October 2, 2022    Respectfully submitted,

   */ s / Dorothy A Smulley*
   Dorothy A Smulley
   Plaintiff *pro se*
   408 Bar Harbour Road
   Stratford CT 06614
   tel/fax  203 308 0171
   email  *frrancesca04@gmail.com*

**65**

### *Certification of Compliance with Local Rule 32.1(a)*

I hereby certify pursuant to Local Rule 32.1(a) the attached brief is proportionally spaced, has a typeface (Times New Roman) of 14 points, and contains 13,276 words excluding table of contents, table of authorities and certificates of compliance and service.

Dated:          October 2, 2022             Respectfully submitted,

  / s / *Dorothy A Smulley*
Dorothy A Smulley
Plaintiff *pro se*
408 Bar Harbour Road
Stratford CT 06614
tel/fax  203 308 0171
email  *frrancesca04@gmail.com*

**66**

*Certification of Service*

I hereby certify on October 2, 2022, a copy of plaintiff appellant's brief was filed electronically and served upon all counsels of record via the ECF filing system.  A hard copy was also mailed to the following.

Peter J Biging
Goldberg Segalla LLP
711 3rd Avenue, Suite 1900
New York NY 10017

Daniel H Kryzanski's
Law Offices of Daniel H Kryzanski's
30 Ferry Blvd, #2
Stratford CT 06615

Phillip T Newbury
Howd & Ludorf LLC
65 Wethersfield Ave
Hartford CT 06114-1190

I further certify on October 2, 2022, three hard copies of plaintiff appellant's brief and appendix were served by mail via Federal Express to:

> Catherine O'Hagan Wolfe, Clerk of Court
> United States Court of Appeals for the Second Circuit
> Thurgood Marshall United States Courthouse
> 40 Foley Square
> New York NY 10007

> /s/ *Dorothy A Smulley*
> Dorothy A Smulley
> Plaintiff Appellant *pro se*
> 408 Bar Harbour Road
> Stratford CT 06614
> tel/fax 203 386 0171
> email  frrancesca04@gmail.com

**67**